**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KALDREN LLC | |
| Plaintiff, | |
| | C.A. No. _____ |
| v. | |
| | JURY TRIAL DEMANDED |
| KIK US, INC. | |
| Defendant. | |

<u>**COMPLAINT FOR PATENT INFRINGEMENT**</u>

Plaintiff Kaldren LLC ("Kaldren" or "Plaintiff"), by and through its attorneys, hereby alleges for its Complaint for Patent Infringement against Defendant Kik US, Inc. ("Kik") on personal knowledge as to its own activities and on information and belief as to all other matters, as follows:

<u>THE PARTIES</u>

1.      Kaldren is a Texas limited liability company with a principal office at 555 Republic Drive, Suite 289, Plano, Texas 75074-5481.

2.      Kik is a Delaware corporation with a registered agent for service of process, Cogency, Inc.., located at 850 New Burton Road, Suite 201, Dover, DE 19904.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§271, 281, 284, and 285.

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Kik because it (either directly or through its subsidiaries, divisions, or groups) has sufficient minimum contacts with the forum as a result of business conducted within the State of Delaware; and/or specifically over Kik (either directly or through its subsidiaries, divisions, or groups) because of its infringing conduct within or directed at parties in the State of Delaware and, therefore, this district.

6.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(b).

## THE PATENTS-IN-SUIT

7.      On August 8, 2000, the United States Patent and Trademark Office issued U.S. Patent No. 6,098,882 ("the '882 Patent"), entitled "Variable Formatting of Digital Data Into a Pattern."  A true and correct copy of the '882 Patent is attached as Exhibit 1 to this Complaint.

8.      On January 23, 2001, the United States Patent and Trademark Office issued U.S. Patent No. 6,176,427 ("the '427 Patent"), entitled "Variable Formatting of Digital Data Into a Pattern."  A true and correct copy of the '427 Patent is attached as Exhibit 2 to this Complaint.

9.      On November 23, 2004, the United States Patent and Trademark Office issued U.S. Patent No. 6,820,807 ("the '807 Patent"), entitled "Variable Formatting of Digital Data Into a Pattern."  A true and correct copy of the '807 Patent is attached as Exhibit 3 to this Complaint.

10.      On October 9, 2012, the United States Patent and Trademark Office issued U.S. Patent No. 8,281,999 ("the '999 Patent"), entitled "Variable Formatting of Digital Data Into a Pattern."  A true and correct copy of the '999 Patent is attached as Exhibit 4 to this Complaint.

11.      Kaldren is the owner of all right, title, and interest in and to the '882 Patent, the '427 Patent, the '807 Patent, and the '999 Patent (collectively, the "Patents in Suit"), including the right to assert all causes of action arising under the Patents in Suit, and the right to any and all remedies for the infringement of the Patents in Suit.  Assignments for all Patents in Suit are duly recorded at the United States Patent and Trademark Office at Reel/Frame 041550/0316.

12.     The'882 Patent, the '427 Patent, the '807 Patent, and the '999 Patent are presumed valid under 35 U.S.C. § 282(a).

<u>COUNT 1: INFRINGEMENT OF THE '882 PATENT</u>

13.     Plaintiff incorporates by reference the above paragraphs.

14.     Defendant has marketed a social networking application (or "app") under the name "Kik" at least as early as 2010.  The Kik App can be downloaded to mobile devices through sites such as the Google Play Store and the Apple App Store.

15.     Defendant has operated various computer servers corresponding to its kik.com domain since at least 2010 ("Kik Servers").  The kik.com domain includes several subdomains, such as the api.kik.com and dev.kik.com subdomains. One or more of the Kik Servers communicates with the Kik App during operation of the Kik App on a mobile device.

16.     The Kik App includes functionality to scan and process a Kik Code.

17.     One or more of the Kik Servers include functionality to generate Kik Codes.

18.     Kik Codes were introduced at least as early as September 8, 2015.  *See, e.g.,* "Introducing Kik Codes," https://blog.kik.com/2015/09/08/kik-codes/.

19.     A Kik Code is a pattern that includes a two dimensional circular arrangement of symbols, such as light colored (e.g., white) dots and dashes on a dark colored (e.g., black) background.

20.     The following illustration shows an example of a Kik Code:



Source: https://twitter.com/kik/status/702958793236357124

21.     The following example of programming-language syntax, taken from an online manual for the Kik Application Programming Interface (API), shows that a programming construct called a "create_code API endpoint" can be used to create new Kik Codes. The

create_code API endpoint accepts a string parameter called "data," which is embedded in the Kik Code and detected when the Kik Code is scanned.

**create_code**(*data=None*)

Creates a Kik Code for your bot.

| | |
|---|---|
| Parameters: | **data** (*dict, str*) – (optional) Data to embed in the code, which will be returned in a *scan-data* message when the code is scanned. |
| Returns: | A `code` representing the code. |
| Return type: | kik.Code |

Source: http://kik.readthedocs.io/en/latest/api.html

22.     The following text, taken from a portion of the Kik website dedicated to teaching developers how to use the Kik API, shows that a Kik Code can be used to add friends, join a group, or access a service:

Kik Codes are a quick and easy way to add friends and join groups on Kik. Kik Codes can also help you access fun or useful services by immediately connecting you with bots. For example, if you are in a restaurant or store that displays a Kik Code, you can scan the code to access specific promotions available to Kik users.

Source: https://kikinteractive.zendesk.com/hc/en-us/articles/115005872987-Scan-a-Kik-Code

23.     The following illustrations from a YouTube video show Kik Codes being used to join a chat group called "Cat Pictures" and to retrieve data representing a coupon for free pizza.



Source: https://www.youtube.com/watch?v=sAgHx-rNUUw



Source: https://www.youtube.com/watch?v=sAgHx-rNUUw

24.     At least one Kik Server hosts functionality enabling the create_code API endpoint to create Kik Codes.

25.     At least one Kik Server, such as the server hosting the create_code API endpoint, encodes a "data" parameter into the Kik Code.

26.     The Kik Code (with the encoded data) includes a unique set of dots and dashes, and at least some of the dots and some of the dashes have different lengths.

27.     At least one Kik Server, such as a server hosting the create_code API endpoint, has defined at least one attribute—such as a length, of at least one symbol, such as a dash—of the Kik Code in terms of printer pixels.

28.     At least one Kik Server, such as the server hosting the create_code API endpoint, has formatted a set of dots and dashes into the Kik Code.

29.     The Kik Code (generated by the Kik Server) is scannable by the Kik App executing on a mobile device (e.g., a mobile phone, such as an Apple iPhone) to perform various functions, such as retrieving a coupon, initiating a chat, or joining a chat group.

30.     Defendant operated mobile devices executing the Kik App and internal servers that communicated with such mobile devices to develop, test, modify, and/or maintain Kik Code functionality.  Kik Code functionality refers to generating, encoding, outputting, scanning, and/or decoding Kik Codes.

31.     Prior to introducing Kik Codes (which as shown above were introduced at least as early as September 2015), Defendant generated Kik Codes for existing Kik users (e.g., using the create_code API endpoint or other similar software modules).

32.     After introducing Kik Codes, Defendant generated Kik Codes for newly-registered Kik users and in response to execution of the create_code API endpoint.

33.     The Kik App, Kik Servers, mobile devices, and internal servers used by the Defendant to develop, test, modify, and/or maintain the Kik App or Kik Code functionality (and/or combinations thereof) are referred to herein as "Accused Products." Each of the above may be considered an Accused Product.

34.     Defendant has directly infringed one or more claims of the '882 Patent, including at least Claim 32, in this judicial district and elsewhere in Delaware, literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale and/or selling at least one of the Accused Products during the pendency of the '882 Patent (e.g., Claim 32 of

the '882 Patent recites a method of encoding data into a pattern for output to a substrate, the pattern comprising at least one symbol representing at least part of said data, the method comprising: defining at least one attribute of said at least one symbol in terms of printer pixels; and formatting said at least one symbol into said pattern).

35.     Plaintiff reserves the right to modify its infringement theories as discovery proceeds in this case, and Plaintiff shall not be estopped for claim construction purposes by its preliminary infringement analysis provided in this Complaint.     Plaintiff's preliminary infringement analysis does not limit its final claim construction positions.

<u>COUNT 2: INFRINGEMENT OF THE '427 PATENT</u>

36.     Plaintiff incorporates by reference the above paragraphs.

37.     Illustrations of five different Kik Codes are shown side-by-side below:



Sources: https://twitter.com/kik/status/702958793236357124;  https://docs.api.ai/docs/kik-integration;  https://plus.google.com/116521533100155508427/posts/DDdPdwRB1Az; https://ifunny.co/fun/oYQSY2uJ3?gallery=tag&query=iStardollars; https://play.google.com/store/apps/details?id=kik.android&hl=en

38.     The innermost ring of dots/dashes in a Kik Code, including the five Kik Codes shown above, is the same.   Below is an enlarged illustration of the innermost ring of dots/dashes:



39.     The Kik App determines formatting information including dot size and dash sizes from the symbols (dots and dashes) contained in the innermost ring of a Kik Code.

40.     The Kik App relies on a computer vision algorithm to decode the Kik Code.  *See* Interview with Katherine Carras, the intern that led the Kik Code design team, http://www.therecord.com/news-story/5931498-kik-codes-boost-chat-app-s-fun-factor/.

41.     The computer vision algorithm determines locations of the innermost ring and the outer rings of a Kik Code in the process of decoding the Kik Code.

42.     The Kik App derives digital data values from the Kik Code by decoding the Kik Code.

43.     The digital data values are derived from the outer rings of the Kik Code based on the dot size and dash sizes determined from scanning and decoding an image of the innermost ring of the Kik Code.

44.     The digital data values (embedded in a Kik Code) are used by the Kik App executing on a mobile device to perform various functionality, such as retrieving a coupon, initiating a chat, or joining a chat group.

45.     Defendant operated mobile devices executing the Kik App to develop, test, modify, and/or maintain the Kik Code functionality.

46.     Defendant operated printing devices that printed Kik Codes that were scanned by the mobile devices referenced in the preceding paragraphs to develop, test, modify, and/or maintain the Kik Code functionality, including decoding of the Kik Code.

47.     Defendant has directly infringed one or more claims of the '427 Patent, including at least Claim 9, in this judicial district and elsewhere in Delaware, literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale and/or selling at least one of the Accused Products during the pendency of the '427 Patent (e.g., Claim 9 of the '427 Patent recites a method of decoding digital data values from a pattern, the method comprising: determining formatting information concerning a plurality of first cells contained in a first portion of the pattern from a first feature contained in a second portion of the pattern; determining the locations of the first cells; and deriving digital data values from the cells by using the formatting information provided by the first feature).

48.     Plaintiff reserves the right to modify its infringement theories as discovery proceeds in this case, and Plaintiff shall not be estopped for claim construction purposes by its preliminary infringement analysis provided in this Complaint.  Plaintiff's preliminary infringement analysis does not limit its final claim construction positions.

COUNT 3: INFRINGEMENT OF THE '807 PATENT

49.     Plaintiff incorporates by reference the above paragraphs.

50.     The Kik App retrieves data based on scanning and processing a Kik Code.

51.     A Kik Code is a machine readable indicia that includes digital data values formatted into a two dimensional pattern.

52.     The Kik App controls a camera of a mobile device to scan a Kik Code.

53.     The Kik App controls a processor of the mobile device to extract an address of an information resource (e.g., a URL for an Internet resource, data related to an image of a coupon, an identifier of a user to be added as a friend and/or to initiate a chat, an identifier of a group to join, or an identifier of a chat conversation to join) from the Kik Code.

54.     The Kik App retrieves and presents the information resource to a user of the mobile device.

55.     When a Kik Code is scanned to add a friend, the Kik App adds the friend to the user's friend list and begins a chat with the friend.  The following illustration shows a tweet from the official Kik Twitter account, where the tweet includes a Kik Code that can be scanned to initiate a chat with a user having the username "kikteam":





Source: https://twitter.com/kik/status/641695863325241345

56.     The Kik App retrieves data (e.g., a user id of the user and/or a chat id of the chat) related to the friend's username and displays the friend's username and a chat window.

57.     When a Kik Code is scanned to join a chat group, the Kik App retrieves and displays data representing text, links, images, and/or video for the chat group, as shown above in Paragraph 23 for the "Cat Pictures" chat group.

58.     When a Kik Code is scanned to access a coupon, the Kik App retrieves and displays data related to an image of a coupon, as shown above in Paragraph 23 for the "Free Pizza" coupon.

59.     Defendant operated mobile devices executing the Kik App to develop, test, modify, and/or maintain the Kik Code functionality.

60.     Defendant operated internal servers that communicated with the mobile devices referenced in the preceding paragraphs to develop, test, modify, and/or maintain the Kik Code functionality.

61.     Defendant has directly infringed one or more claims of the '807 Patent, including at least Claim 20, in this judicial district and elsewhere in Delaware, literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale and/or selling at least one of the Accused Products during the pendency of the '807 Patent (e.g., Claim 20 of the '807 Patent recites a method for retrieving an information resource, the method comprising: scanning a machine readable indicia comprising digital data values formatted into a two dimensional pattern; extracting an address of the information resource from the machine readable indicia; and retrieving the information resource for presentation to a user).

62.     Plaintiff reserves the right to modify its infringement theories as discovery proceeds in this case, and Plaintiff shall not be estopped for claim construction purposes by its preliminary infringement analysis provided in this Complaint.   Plaintiff's preliminary infringement analysis does not limit its final claim construction positions.

## COUNT 4: INFRINGEMENT OF THE '999 PATENT

63.     Plaintiff incorporates by reference the above paragraphs.

64.     The Kik App that is executable on mobile devices represents a communication system.

65.     The Kik App includes processing means, such as processor-executable instructions for decoding Kik Codes.

66.     A Kik Code is a machine readable code formatted into a two dimensional pattern.

67.     A Kik Code includes contact information, such as an identifier of a user to be added as a friend and/or to initiate a chat, an identifier of a group to join, or an identifier of a chat conversation to join.

68.     The contact information included in a Kik Code is derived by decoding the Kik Code.

69.     The Kik App includes imaging means such as processor-executable instructions for controlling a camera of the mobile device executing the Kik App, for imaging a Kik Code.

70.     The image of the Kik Code is decoded responsive to the imaging means imaging the Kik code.

71.     The Kik App includes communicating means such as processor-executable instructions, to communicate using the contact information derived from the Kik Code.

72.     When a Kik Code is scanned to add a friend, the Kik App derives an identifier of the friend from the Kik Code and communicates using the derived identifier, for example to add the friend to a friends list and to begin a chat with the friend.

73.     When a Kik Code is scanned to join a chat group, the Kik App derives an identifier of the chat group and communicates using the derived identifier, for example to retrieve and display data representing text, links, images, and/or video for the chat group, as shown above in Paragraph 23 for the "Cat Pictures" chat group.

74.     The Defendant used a mobile device, representing the communication system, to develop, test, modify, and/or maintain at least one of the Accused Products during the pendency of the '999 Patent.

75.     Defendant has directly infringed and continues to infringe one or more claims of the '999 Patent, including at least Claim 8, in this judicial district and elsewhere in Delaware, literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale and/or selling at least one of the Accused Products during the pendency of the '999 Patent (e.g., Claim 8 of the '999 Patent recites a communication system comprising: processing means for decoding a machine-readable code formatted into a two dimensional

pattern where that machine-readable code contains contact information, whereby the contact information is derived, imaging means for imaging a machine-readable code whereby the processing means decodes the image of the machine-readable code produced by the imaging means, and communicating means for communicating where said communicating means communicates using the contact information derived from the processing means).

76.     Defendant has received notice and actual or constructive knowledge of the '999 Patent since, at the latest, the date of service of this Complaint.

77.     Through its actions, Defendant has actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the '999 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating instructions on how to use the Accused Products.   An example of such advertising,    promoting,    and/or    instructing    is    the    video    and    text    at https://blog.kik.com/2015/09/08/kik-codes/.

78.     Through its actions, Defendant has contributed to the infringement of the '999 Patent by having its product makers, distributors, retailers, and/or end users sell, offer for sale, or use one or more of the Accused Products throughout the United States, including within this judicial district, with knowledge that one or more of the Accused Products infringe the '999 Patent.  The Accused Products are especially made or adapted for infringing the '999 Patent and have no substantial non-infringing use.  For example, in view of the preceding paragraphs, one or more of the Accused Products contain functionality which is material to at least one claim of the '999 Patent.

79.     Plaintiff reserves the right to modify its infringement theories as discovery proceeds in this case, and Plaintiff shall not be estopped for claim construction purposes by its preliminary infringement analysis provided in this Complaint.   Plaintiff's preliminary infringement analysis does not limit its final claim construction positions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A.      Enter judgment that Defendant has infringed one or more claims of the '882 Patent, the '427 Patent, and the '807 Patent literally and/or under the doctrine of equivalents;

B.      Enter judgment that Defendant has infringed, infringes and continues to infringe one or more claims of the '999 Patent literally and/or under the doctrine of equivalents

C.      Award Plaintiff past and future damages, to be paid by Defendant in an amount adequate to compensate Plaintiff for such past and future damages, together with pre-judgment and post-judgment interest for the infringement by Defendant of the '882 Patent, the '427 Patent, the '807 Patent, and the '999 Patent through the date such judgment is entered in accordance with 35 U.S.C. §284;

D.      An accounting of all infringing sales including, but not limited to, those sales not presented at trial; and

E.      Award Plaintiff its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June 13, 2017

STAMOULIS & WEINBLATT LLC
*/s/Stamatios Stamoulis*
Stamatios Stamoulis #4606
stamoulis@swdelaw.com
Richard C. Weinblatt #5080
weinblatt@swdelaw.com
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
(302) 999-1540

TOLER LAW GROUP, PC
Jeffrey G. Toler (*Pro Hac Vice* motion to be filed)
jtoler@tlgiplaw.com
Aakash S. Parekh (*Pro Hac Vice* motion to be filed)
aparekh@tlgiplaw.com
Robert P. Paladino (*Pro Hac Vice* motion to be filed)
rpaladino@tlgiplaw.com
Damian M. Biondo (*Pro Hac Vice* motion to be filed)
dbiondo@tlgiplaw.com
8500 Bluffstone Cove
Suite A201
Austin, TX 78759
(512) 327-5515

*Attorneys for Plaintiff*
*Kaldren LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send electronic notification of such filings to all registered counsel.

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis #4606